UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 Case |
| Tania Rojo, | BKY 13-40604 |
| Debtor. | |

## MEMORANDUM AND OPINION

At Minneapolis, Minnesota on July 18, 2013.

This motion came on for an evidentiary hearing on June 25, 2013, on the trustee's objection to the debtor's amended exemptions under 11 U.S.C. § 522. Erik Ahlgren appeared on behalf of the Chapter 7 trustee. Stephen Conroy appeared on behalf of the debtor, Tania Rojo.

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157(a)-(b)(1), 1334(a)-(b) and Local Rule 1070-1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

For the reasons stated below, the court sustains the trustee's objection.

### BACKGROUND

On January 24, 2013, the debtor filed her federal and state tax returns. Prior to January 31, 2013, the debtor received a bankruptcy worksheet from her attorney, Stephen Conroy, and partially completed it. Specifically, the debtor omitted information regarding tax refunds, cash on hand, and bank accounts. On January 31, 2013, the debtor met with Mr. Conroy to discuss the worksheet and her intent to file for bankruptcy. At this meeting, Mr. Conroy assisted in the completion of the worksheet, including listing the debtor's tax refund as "unknown."

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 07/18/2013
Lori Vosejpka, Clerk, by LH

1

On February 4, 2013, the debtor's 2012 federal income tax refund of $9,714.00 was deposited in her bank account. On the same day, the debtor withdrew $1,500.00 in cash. On February 5, 2013, the debtor wrote a mortgage payment check for $1,047.31 and on February 6, 2013, the debtor wrote a $2,205.60 electronic check to repay a debt owed to Iris Figueroa for charges the debtor made to Ms. Figueroa's Home Depot credit card.

The debtor met with Mr. Conroy to review the bankruptcy petition and schedules on February 7, 2013. The petition commencing this case was then filed on February 8, 2013. Also on February 8, 2013, the debtor withdrew $4,800.00 in cash from her bank account. On her schedules, the debtor listed the value of her cash on hand as $10.00 and state and federal tax refunds as "unknown." The debtor claimed a 50% interest in her homestead, with her interest valued at $76,500.00 based on a full value of $153,000.00.

The meeting of creditors was held on April 4, 2013. At the meeting, the debtor testified that she signed the petition, schedules, statements, and related documents that were filed with the court. The debtor further testified that she had read those documents, that she was personally familiar with the information in those documents, and that the information contained in those documents was true and correct. The trustee inquired about her 2012 tax return, which the debtor provided. After the trustee asked the debtor if she had received her refunds, the debtor admitted to having received her federal tax refund. The trustee requested bank statements covering the dates from the deposit of the 2012 federal tax refund to the date of filing. The debtor specifically denied making payments to creditors or friends, other than an estimated $200.00 to her mother and other small payments of "maybe $20" to others.

After reviewing the bank statements, the trustee contacted Mr. Conroy on April 11, 2013, and requested receipts and documentation explaining how the $6,300.00 cash withdrawal was

used by the debtor. After providing some information regarding expenditures, Mr. Conroy noted that:

> [R]eceipts/checks previously provided to you show payments made from Ms. Rojo's accounts, not from cash. She made relatively small expenditures for food, clothing, etc. from cash on hand between February 4-8. We agree that the great majority of the $6,290.00 was still in her possession on the date she filed.[1]

Mr. Conroy also confirmed that the debtor had not yet received her 2012 state tax refund.

On April 12, 2013, the debtor filed amended Schedules A, B, and C. On amended Schedule A, the debtor reduced the current value of her interest in her homestead from $76,500.00 to $63,930.00. On amended Schedule B, the debtor (1) increased the debtor's cash on hand from $10.00 to $4,596.09; (2) added a previously undisclosed Wells Fargo account (Account No. 4413), with a value of $681.89; (3) reduced the value of her Wells Fargo checking account (Account No. 9372) from $620.00 to $155.72; (4) changed the tax refund description to "State Tax Refunds" (removing "Federal"); and (5) changed the value of the tax refund from "unknown" to $2,171.00. On amended Schedule C, the debtor (1) reduced the homestead exemption from $13,561.50 to $991.50; (2) increased the exemption for cash on hand from $10.00 to $4,596.09; (3) added the undisclosed Wells Fargo account (Account No. 4413) and added an exemption for the $681.89 in the account; (4) reduced the exemption for the Wells Fargo checking account (Account No. 9372) from $620.00 to $155.72; and (5) changed the tax refund exemption from "unknown" to $2,171.00.

At the hearing, the debtor admitted that she withdrew the funds she received from her 2012 federal tax refund, but claimed that she did not know she was required to list the tax refunds in her schedules. At one point, the debtor testified that Mr. Conroy instructed her to

---

[1] Findings of Facts, Conclusions of Law and Order (Proposed By Trustee) at 3, *In re Rojo*, No. 13-40604 (Bankr. D. Minn. argued Jun. 25, 2013), ECF No. 30.

3

check her bank accounts on the day she signed the petition, but the debtor later stated that she did not remember any instruction. The debtor was unable to offer any evidence or explanation as to how she spent the $6,300.00 she withdrew from her account.

## LEGAL STANDARD AND BURDEN OF PROOF

Generally, debtors may amend their schedules, including their exemption claims, at any time before the case is closed. Fed. R. Bankr. P. 1009(a); *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885, 889 (8th Cir. 2002). However, a debtor's bad faith can eliminate the debtor's right to amend exemptions. *In re Barrows*, 408 B.R. 239, 243 (B.A.P. 8th Cir. 2009). An examination of the totality of the circumstances is required to determine a debtor's bad faith. *Id.* The objecting party holds the burden of demonstrating bad faith by a preponderance of the evidence. Fed. R. Bankr. P. 4003(c).

## AMENDED EXEMPTIONS FOR CASH ON HAND, WELLS FARGO ACCOUNTS, AND FEDERAL AND STATE TAX REFUNDS

The debtor seeks to amend Schedule B to account for receipt of her federal tax refund and her promised state tax refund. The debtor also attempts to amend Schedule C to exempt these additional funds. The court determines that the debtor did not act in good faith because it is clear that the debtor did not want to include her tax refunds in the bankruptcy estate and only amended her schedules when she got caught.

The debtor withdrew $1,500.00 from her account four days before she filed her petition and withdrew $4,800.00 on the same day she filed. At the time the debtor signed the petition and schedules, the debtor admits "that the great majority of the $6,290.00 was still in her possession."[2] Yet, on Schedule B, the debtor listed cash on hand as $10.00 and the balance of

---

[2] Stipulation of Uncontested Facts, *In re Rojo*, No. 13-40604 (Bankr. D. Minn. argued Jun. 25, 2013), ECF No. 20.

4

her checking account as $620.00. The debtor signed the petition, schedules, statements, and related documents. The debtor testified at the meeting of creditors that she had read those documents, that she was personally familiar with the information in those documents, and that the information contained in those documents was true and correct. Now, the debtor seeks to amend her schedules and her only explanations for the inaccuracies contained within them is that she does not check her bank accounts regularly and did not know she needed to include the tax refund in her bankruptcy estate.

The debtor's first explanation is not credible. The trustee provided the court with bank records that show substantial activity evidencing the debtor's access of her bank accounts. On February 4, 2013, the federal tax refund was deposited and, on the very same day, the debtor made her first cash withdrawal of $1,500.00. The balance of the account prior to the deposit of the tax refund was only $222.59. In the next four days before filing the petition on February 8, 2013, the debtor wrote a check for $1,047.31, sent an e-check for $2,205.60, and withdrew an additional $4,800.00 in cash. Based on this activity, the court does not believe that the debtor did not know her account balance at the time of filing.

The debtor's second explanation, that she did not know she needed to include her tax refunds, is also not credible. The debtor's original bankruptcy worksheet contains an annotation regarding her tax refunds, which shows that she and her attorney were aware of the issue. The value of the tax refunds was listed as "unknown" on Schedule B, yet the debtor received her 2012 federal tax refund four days prior to reviewing the petition and schedules and still signed them, attesting to their validity. The debtor's subsequent actions show an attempt to obfuscate the situation. At the meeting of creditors, the debtor told the trustee that she had the 2012 tax refund in her bank account and told the trustee that she had not spent any of the money, aside

5

from $200.00. Neither of these statements was true. The debtor further failed to provide the trustee with any receipts or documentation regarding the use of the funds and continued to make misleading statements at the hearing.[3] The debtor's conduct evidences her intent to ensure the money from her tax refunds would not be included in the bankruptcy estate. Thus, the court finds that the debtor acted in bad faith and is not allowed to amend her exemptions to account for the tax refunds.

## AMENDED HOMESTEAD EXEMPTION

The debtor's original petition listed the current value of the debtor's interest in her homestead as $76,500.00 and the debtor exempted $13,561.50 under 11 U.S.C. § 522(d)(1). The debtor signed the petition under oath, so the court treats this value as true, barring an objection from an interested party. No objection to the debtor's original valuation was filed and, at the meeting of creditors, the debtor testified that her homestead valuation, along with everything else in the petition, was true and correct to the best of her knowledge. Only after the trustee indicated that the tax refunds were non-exempt did the debtor amend Schedule A, decreasing the value of her ownership interest in her homestead from $76,500.00 to $63,930.00 and decreasing the debtor's claimed exemption from $13,561.50 to $991.50. The debtor offered no explanation as to why a new valuation was necessary except to state that "upon the chance that the homestead

---

[3] While the debtor professes a limited proficiency in English, the debtor had little difficulty understanding the questions from her attorney and provided succinct and appropriate answers to his questions at the hearing. It was only when the trustee began questioning the debtor that the debtor began to equivocate and state that she could not remember what happened or understand the question. The court finds that the debtor's English proficiency was sufficient and that she understood the issues in this case.

was worth less than the amount stated in the property tax statement, [the debtor] arranged for a market analysis to be completed by a real estate agent/appraiser."[4]

It is apparent that the debtor only sought a new valuation in order to increase her exemption for her tax refunds, which is evidence of the debtor's bad faith. Consequently, the court does not permit the debtor to amend her schedules in regards to her homestead valuation and exemption.

## CONCLUSION

The trustee sufficiently demonstrated the debtor's bad faith in attempting to amend her schedules. Therefore, the trustee's objection to the debtor's proposed amendment is sustained.

IT IS HEREBY ORDERED:

The debtor's proposed amendment filed as Docket #10 is denied and stricken.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge

---

[4] Opposition Brief/Memorandum at 2, *In re Rojo*, No. 13-40604 (Bankr. D. Minn. argued Jun. 25, 2013), ECF No. 23.